

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTOINE TUCKER,

                    Plaintiff,

      -against-

CITY OF NEW YORK, PAUL RAMIREZ, Individually, BRENDAN KALKAU, Individually, and JOHN DOE 1 through 10, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

                      Defendants.

**COMPLAINT**

Docket No.

**JURY TRIAL DEMANDED**

      Plaintiff ANTOINE TUCKER, by his attorney, The Trainor Law Firm, P.C., complaining of the defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

      1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which are secured by these statutes and the Constitutions of the United States and the State of New York. Plaintiff also asserts supplemental state law claims.

### JURISDICTION

      2.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

      3.     This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

4.  Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because this is the District in which these claims arose.

## JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

6.  Plaintiff ANTOINE TUCKER is a thirty-two year old United States Citizen and African-American male who resides in Brooklyn, New York.

7.  Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.  Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9.  At all times hereinafter mentioned, the individually named defendants, PAUL RAMIREZ (Shield No. 11742), BRENDAN KALKAU (Shield No. 10287), and JOHN DOE 1 through 10 (Shield Nos. unknown), were duly sworn police officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the

CITY OF NEW YORK.

11. Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

### INCIDENT NUMBER 1: FEBRUARY 20, 2012

12. On February 20, 2012, beginning at approximately 10:30 a.m., Plaintiff Antoine Tucker ("Mr. Tucker") was lawfully present in the vicinity of 1535 Broadway, New York, New York, when Defendant Paul Ramirez and Defendants John Doe 1 through 3, without any lawful justification whatsoever, unlawfully arrested him.

13. Before, during, and after the defendants arrested him, Mr. Tucker committed no crime or offense. Likewise, at all times relevant to these events, Mr. Tucker was not behaving in a manner that would suggest to any reasonable police officer that he had done anything unlawful.

14. At the aforementioned time and place, Mr. Tucker was lawfully distributing his own original music that was recorded on compact discs ("CDs") that he had created. Mr. Tucker's music and his disseminating it are protected speech activities under the First Amendment to the United States Constitution. As the United States Supreme Court held,

> Music is one of the oldest forms of human expression. From Plato's discourse in the Republic to the totalitarian state in our own times, rulers have known its capacity to appeal to the intellect and to the emotions, and have censored musical compositions to serve the needs of the state. . . . The Constitution prohibits any like attempts in our own legal order. Music, as a form of expression and communication, is protected under the First Amendment.

Ward v. Rock Against Racism, 491 U.S. 781, 790 (1989) (internal citations omitted).

15. While Mr. Tucker was lawfully distributing his music, Defendant Ramirez and Defendants John Doe 1 through 3, despite lacking probable cause, reasonable suspicion, and

having no legal justification whatsoever, unlawfully seized Mr. Tucker, placed handcuffs on his wrists, placed him in an NYPD vehicle, and transported him to an NYPD precinct, where he remained unlawfully imprisoned.

16. Upon processing Mr. Tucker's arrest at the precinct, the defendants transported him to the Manhattan Detention Complex, where he remained unlawfully imprisoned until he was brought before the New York County Criminal Court for arraignment on the baseless charges filed under docket number 2012NY015002. These charges were filed based upon the false allegations of Defendant Ramirez.

17. Defendant Ramirez knowingly created the underlying false information to justify this false arrest and forwarded this information to the District Attorney's Office knowing that this information would be used against Mr. Tucker at trial. Defendant Ramirez falsely claimed that he observed Mr. Tucker placing his CDs in numerous pedestrians' faces and blocking pedestrian traffic.

18. On February 21, 2012, Mr. Tucker was arraigned on the false charges of violating New York City Administrative Code § 10-136(b)(1), Aggressive Begging in a Public Place, and New York Penal Law § 204.20(5) Disorderly Conduct. Upon arraignment, the presiding Criminal Court judge released Mr. Tucker on his own recognizance.

19. Defendants Ramirez and John Doe 1 through 3 initiated criminal proceedings against Mr. Tucker despite their knowledge that they lacked probable cause, reasonable suspicion, or any legal justification whatsoever to do so.

20. The defendants initiated this prosecution with malice, and otherwise caused this prosecution to be commenced against Mr. Tucker for the purpose of obtaining a collateral objective outside the legitimate ends of the legal process, to wit, to cover up their

aforementioned abuse of authority, unlawful activity, and unlawful suppression of First Amendment activities.

21.  This malicious prosecution and denial of fair trial rights compelled Mr. Tucker to return to Court to face these false charges on numerous occasions, when, on June 10, 2013, the New York County Criminal Court dismissed this malicious prosecution and ordered the case sealed.

22.  All of the events leading up to and culminating in Mr. Tucker's false arrest occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene to prevent this illegal conduct despite having every opportunity to do so.

**INCIDENT NUMBER 2: FEBRUARY 29, 2012**

23.  On February 29, 2012, beginning at approximately 10:45 a.m., Mr. Tucker was lawfully present in the vicinity of 1535 Broadway, New York, New York, when Defendant Brendan Kalkau and Defendants John Doe 4 through 6, without any lawful justification whatsoever, unlawfully arrested him.

24.  Before, during, and after the defendants arrested him, Mr. Tucker committed no crime or offense. Likewise, at all times relevant to these events, Mr. Tucker was not behaving in a manner that would suggest to any reasonable police officer that he had done anything unlawful.

25.  At the aforementioned time and place, Mr. Tucker was lawfully distributing his own original music that was recorded on CDs that he had created. Mr. Tucker's music and his disseminating it are protected speech activities under the First Amendment to the United States Constitution.

26.  While Mr. Tucker was lawfully distributing his music, Defendant Kalkau and

Defendants John Doe 4 through 7, despite lacking probable cause, reasonable suspicion, and having no legal justification whatsoever, unlawfully seized Mr. Tucker, placed handcuffs on his wrists, placed him in an NYPD vehicle, and transported him to an NYPD precinct, where he remained unlawfully imprisoned.

27. Upon processing Mr. Tucker's arrest at the precinct, the defendants transported him to the Manhattan Detention Complex, where he remained unlawfully imprisoned until he was brought before the New York County Criminal Court for arraignment on the baseless charges filed under docket number 2012NY016687. These charges were filed based upon the false allegations of Defendant Kalkau.

28. Defendant Kalkau knowingly created the underlying false information to justify this false arrest and forwarded this information to the District Attorney's Office knowing that this information would be used against Mr. Tucker at trial. Defendant Kalkau falsely claimed that he observed Mr. Tucker approaching and stopping numerous pedestrians, placing his CDs in their faces, forcing his CDs in their hands, and blocking pedestrian traffic.

29. On March 1, 2012, Mr. Tucker was arraigned on the false charges of violating New York City Administrative Code § 10-136(b)(1), Aggressive Begging in a Public Place, and New York Penal Law § 204.20(5) Disorderly Conduct. Upon arraignment, the presiding Criminal Court judge released Mr. Tucker on his own recognizance.

30. Defendants Kalkau and John Doe 4 through 7 initiated criminal proceedings against Mr. Tucker despite their knowledge that they lacked probable cause, reasonable suspicion, or any legal justification whatsoever to do so.

31. The defendants initiated this prosecution with malice, and otherwise caused this prosecution to be commenced against Mr. Tucker for the purpose of obtaining a collateral

objective outside the legitimate ends of the legal process, to wit, to cover up their aforementioned abuse of authority, unlawful activity, and unlawful suppression of First Amendment activities.

32. This malicious prosecution and denial of fair trial rights compelled Mr. Tucker to return to Court to face these false charges on numerous occasions, when, on June 10, 2013, the New York County Criminal Court dismissed this malicious prosecution and ordered the case sealed.

33. All of the events leading up to and culminating in Mr. Tucker's false arrest occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene to prevent this illegal conduct despite having every opportunity to do so.

**INCIDENT NUMBER 3: JUNE 11, 2013**

34. On June 11, 2013, beginning at approximately 11:15 a.m., Mr. Tucker was lawfully present in the vicinity of 711 Seventh Avenue, New York, New York, when Defendant Paul Ramirez and Defendants John Doe 7 through 9, without any lawful justification whatsoever, unlawfully arrested him.

35. Before, during, and after the defendants arrested him, Mr. Tucker committed no crime or offense. Likewise, at all times relevant to these events, Mr. Tucker was not behaving in a manner that would suggest to any reasonable police officer that he had done anything unlawful.

36. At the aforementioned time and place, Mr. Tucker was lawfully distributing his own original music that was recorded on CDs that he had created. Mr. Tucker's music and his disseminating it are protected speech activities under the First Amendment to the United States Constitution.

37. While Mr. Tucker was lawfully distributing his music, Defendant Ramirez and Defendants John Doe 7 through 9, despite lacking probable cause, reasonable suspicion, and having no legal justification whatsoever, unlawfully seized Mr. Tucker, placed handcuffs on his wrists, placed him in an NYPD vehicle, and transported him to an NYPD precinct, where he remained unlawfully imprisoned.

38. Upon processing Mr. Tucker's arrest at the precinct, the defendants transported him to the Manhattan Detention Complex, where he remained unlawfully imprisoned until he was brought before the New York County Criminal Court for arraignment on the baseless charges filed under docket number 2013NY045791. These charges were filed based upon the false allegations of Defendant Ramirez.

39. Defendant Ramirez knowingly created the underlying false information to justify this false arrest and forwarded this information to the District Attorney's Office knowing that this information would be used against Mr. Tucker at trial. Defendant Ramirez falsely claimed that he observed Mr. Tucker approaching and stopping numerous pedestrians, placing his CDs in their personal space, and blocking pedestrian traffic.

40. On June 12, 2013, Mr. Tucker was arraigned on the false charges of violating New York City Administrative Code § 10-136(b)(1), Aggressive Begging in a Public Place, and New York Penal Law § 204.20(5) Disorderly Conduct. Upon arraignment, the presiding Criminal Court judge released Mr. Tucker on his own recognizance.

41. Defendants Ramirez and John Doe 7 through 9 initiated criminal proceedings against Mr. Tucker despite their knowledge that they lacked probable cause, reasonable suspicion, or any legal justification whatsoever to do so.

42. The defendants initiated this prosecution with malice, and otherwise caused this

8

prosecution to be commenced against Mr. Tucker for the purpose of obtaining a collateral objective outside the legitimate ends of the legal process, to wit, to cover up their aforementioned abuse of authority, unlawful activity, and unlawful suppression of First Amendment activities.

43. This malicious prosecution and denial of fair trial rights compelled Mr. Tucker to return to Court to face these false charges on multiple occasions, when, on May 1, 2014, the New York County Criminal Court dismissed this malicious prosecution and ordered the case sealed.

44. All of the events leading up to and culminating in Mr. Tucker's false arrest occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene to prevent this illegal conduct despite having every opportunity to do so.

45. All of the above occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

46. The underlying false arrest, denial of the right to fair trial, malicious prosecution, and suppression of protected First Amendment activities is not an isolated incident. Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the legal basis required for stops and searches, what constitutes probable cause for an arrest, and that they repeatedly arrest completely innocent individuals for exercising their free speech rights on sham charges of violating New

York City Administrative Code § 136(b)(1), Aggressive Begging in a Public Place, and New York Penal Law § 240.20(5), Disorderly Conduct, and engage in falsification to that end. See, e.g., Lederman v. Adams, 45 F. Supp.2d 259 (S.D.N.Y. 1999) (denying summary judgment to defendant City of New York and defendant-police officers where police repeatedly arrested plaintiff, "an artist who displays and sells his work on the sidewalks of Manhattan," which chilled plaintiff's exercise of his First Amendment rights, and finding evidence of a police effort to "rid the streets" of certain types of vendors).

47.     Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the defendants to violate Mr. Tucker's civil rights.

48.     Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware, prior to this incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train and supervise them.

49.     As a result, Plaintiff ANTOINE TUCKER has sustained, among other damages, mental injuries, emotional distress, embarrassment, humiliation, and deprivation of his constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

50. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "49" with the same force and effect as if fully set forth herein.

51. All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

52. All of these aforementioned acts deprived Plaintiff ANTOINE TUCKER of the rights, privileges, and immunities guaranteed to United States citizens by the First, Fourth, and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

53. The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

54. The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

55. The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

56. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

57. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "56" with the same force and effect as if fully set forth herein.

58. The defendants arrested Plaintiff ANTOINE TUCKER each time without probable cause or legal privilege, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

59. The defendants caused Plaintiff ANTOINE TUCKER to be falsely arrested and unlawfully imprisoned, resulting in Plaintiff being placed in fear, humiliated, embarrassed, and deprived of his liberty.

60. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

61. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "60" with the same force and effect as if fully set forth herein.

62. The defendants falsified the information against Plaintiff ANTOINE TUCKER likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecutions of Plaintiff.

63. The defendants caused Plaintiff ANTOINE TUCKER to be prosecuted upon the false information that they submitted to the District Attorney's Office until the underlying prosecutions were dismissed outright on June 10, 2013 and May 1, 2014, respectively.

64. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. § 1983)

65. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66. The defendants initiated, commenced, and continued malicious prosecutions against Plaintiff ANTOINE TUCKER.

67. The defendants misrepresented and falsified the information that they presented to the District Attorney's Office in order to prosecute Plaintiff.

68. The defendants did not make a complete and full statement of facts to the District Attorney's Office in the underlying prosecutions.

69. The defendants caused Plaintiff ANTOINE TUCKER to be prosecuted without any probable cause on all of the underlying criminal cases until all of the charges against him were dismissed outright on June 10, 2013 and May 1, 2014, respectively, resulting in a favorable termination for Plaintiff on all of these cases.

70. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Violation of the First Amendment under 42 U.S.C. § 1983)

71. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72. The defendants violated Plaintiff ANTOINE TUCKER's First Amendment free speech rights and subjected him to retaliation by falsely arresting him for lawfully distributing his original musical compositions and not in response to any unlawful acts of Plaintiff.

73. The defendants violated Plaintiff's First Amendment rights by unlawfully denying him his right to speak freely and by falsely arresting him to deter him from engaging in further protected First Amendment activities.

74. The defendants engaged in a concerted effort to chill Plaintiff ANTOINE TUCKER's exercise of his First Amendment rights by repeatedly falsely arresting him for exercising this fundamental constitutional right.

75. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

76. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "75" with the same force and effect as if fully set forth herein.

77. The defendants had an affirmative duty to intervene on behalf of Plaintiff ANTOINE TUCKER whose constitutional rights were being violated in their presence by other officers, including, but not limited to, the individual defendants.

78. The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

79. As a result of the defendants' conduct, Plaintiff ANTOINE TUCKER was subjected to false arrest; denial of his right to a fair trial; malicious prosecution; suppression of his free speech rights; his liberty was restricted for an extended period of time; he was humiliated and subjected to handcuffing, physical restraints, and ultimately an extended period of imprisonment.

80. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

81. All of the foregoing acts of defendants deprived Plaintiff ANTOINE TUCKER of federally protected rights, including, but not limited to, the right:

    A. To be free from deprivation of civil rights and liberty;

    B. To be free from false arrest/unlawful imprisonment;

    C. To be free from denial of the right to a fair trial;

    D. To be free from malicious prosecution;

    E. To be free from violations of the First Amendment; and

    F. To be free from the failure to intervene.

82. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## STATE CLAIMS

83.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "82" with the same force and effect as if fully set forth herein.

84.     Within ninety (90) days after the claim herein accrued, Plaintiff duly served upon, presented to, and filed with, the CITY OF NEW YORK, a Notice of Claim setting forth all the facts and information required under the General Municipal Law 50-e.

85.     The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof, and more than thirty (30) days have elapsed since the presentation of such claim to the CITY OF NEW YORK.

86.     This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

87.     Plaintiff has complied with all conditions precedent to maintaining this action.

88.     This action falls within one or more of the exceptions outlined in CPLR § 1602.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(Malicious Prosecution under the laws of the State of New York)

89.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "88" with the same force and effect as if fully set forth herein.

90.     The defendants initiated, commenced, and continued malicious prosecutions against Plaintiff ANTOINE TUCKER.

91.     The defendants misrepresented and falsified the information that they presented to the District Attorney's Office in order to prosecute Plaintiff.

92.     The defendants did not make a complete and full statement of facts to the District Attorney's Office in the underlying prosecutions.

16

93. The defendants caused Plaintiff ANTOINE TUCKER to be prosecuted without any probable cause on all of the underlying criminal cases discussed under "Incident Number 1: February 20, 2012," and "Incident Number 2: February 29, 2012," until all of the charges against him were dismissed outright on June 10, 2013, resulting in a favorable termination for Plaintiff.

94. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York)

95. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "94" with the same force and effect as if fully set forth herein.

96. Defendant CITY OF NEW YORK is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

97. As police officers with the NYPD, the individual defendants were employees of Defendant CITY OF NEW YORK and were acting within the scope of their employment when they engaged in the wrongful conduct described herein.

98. As a result of the defendants' conduct, Plaintiff ANTOINE TUCKER has suffered mental anguish, together with fear, apprehension, embarrassment, and humiliation, and an extended period of unlawful imprisonment and deprivation of his liberty.

99. As a result, Plaintiff ANTOINE TUCKER is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual

defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ANTOINE TUCKER demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages in an amount to be determined by a jury;

(B) punitive damages against the individual defendants in an amount to be determined by a jury;

(C) reasonable attorneys' fees and the costs and disbursements of this action; and

(D) such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 5, 2014

Respectfully submitted,

**THE TRAINOR LAW FIRM, P.C.**
26 Broadway, Suite 2100
New York, New York 10004
Tel: (212) 323-7410
Fax: (212) 323-7411

By: _____
CRAIG TRAINOR (CT 1823)

Attorney for Plaintiff ANTOINE TUCKER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTOINE TUCKER,

                Plaintiff,

-against-

CITY OF NEW YORK, PAUL RAMIREZ, Individually, BRENDAN KALKAU, Individually, and JOHN DOE 1 through 10, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

                Defendants.

Docket No.

# COMPLAINT

THE TRAINOR LAW FIRM, P.C.
Attorney for Plaintiff
26 Broadway, Suite 2100
New York, New York 10004